IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

COLIN M. KITZMAN,

*Plaintiff,*

vs.

Case No. 11-2513-EFM

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL
SECURITY,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff Colin M. Kitzman seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying his application for disability and disability insurance benefits under Title II of the Social Security Act. Plaintiff claims that the Commissioner's decision should be reversed because the administrative law judge ("ALJ") failed to consider third-party statements, the ALJ's credibility and residual functioning capacity determinations were not supported by substantial evidence, and the ALJ failed to properly assess whether work existed in the national economy within Plaintiff's residual functioning capacity. Because the Court finds that the ALJ erred as described below, the Court orders that the decision of the Commissioner is reversed and remanded.

## I. Factual and Procedural Background

Kitzman was an employee at Lansing Correctional Facility when he suffered a work-related injury. While testing the integrity of cell bars, Kitzman heard his wrist pop. He was originally diagnosed with a severe sprain and was prescribed physical therapy to help treat the injury. After Kitzman developed hand swelling and pain radiating up his right arm, he underwent an MRI. The results of the MRI indicated faint joint effusion due to minimal inflammatory synovitis.

Kitzman then went to Dr. Brett Miller, M.D., who diagnosed Kitzman with a partial tear of his triangular fibrocartilage complex and scapholunate ligament. Dr. Miller performed an arthroscopy on Kitzman's wrist. Following the arthroscopy, Kitzman underwent occupational therapy and was thought to have mild reflex sympathetic dystrophy syndrome. Kitzman reported continuing problems with his wrist and sought a second opinion from Dr. Brian Divelbiss, M.D., in November 2007.

Dr. Divelbiss diagnosed Kitzman with clinical cubital tunnel syndrome along with probable complex regional pain syndrome. Kitzman subsequently underwent two stellate ganglion blocks. Dr. Divelbiss performed a neuroplasty of Kitzman's right ulnar nerve at the elbow and later performed a right wrist arthroscopy and debridement. In August 2008, Dr. Divelbiss determined that Kitzman had reached maximum medical improvement and imposed work restrictions. Dr. Divelbiss recommended Kitzman follow up with his family physician for pain medications necessitated by his on-the-job injury and the resultant care of the injury.

Kitzman began seeing Dr. Chad Johanning for help with pain management in November 2008. In January 2009, Dr. John Moore IV, M.D., diagnosed Kitzman with complex regional

maintained pain syndrome and recommended Kitzman undergo pain management and avoid further surgeries. Kitzman continued to see Dr. Johanning for pain management.

Kitzman's application for disability benefits was initially denied on September 2, 2008, and again denied after reconsideration on January 27, 2009. Kitzman requested a hearing and appeared before an administrative law judge ("ALJ"). The ALJ denied Kitzman's request for benefits, and the Social Security Administration's Appeals Council denied Kitzman's request for review on August 5, 2011. Because Kitzman has exhausted all administrative remedies available to him, the Commissioner's decision denying Kitzman's application for benefits is now final and this Court has jurisdiction to review the decision.[1]

## II. Legal Standard

Pursuant to 42 U.S.C. § 405(g), "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." Upon review, the Court must determine whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standard.[2] "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance."[3] The Court is not to reweigh the evidence or substitute its opinion for the ALJ.[4] The Court must examine the record as a whole, including whatever in the record detracts from the ALJ's findings, to determine if the ALJ's decision is supported by

---

[1] *See* 45 U.S.C. § 405(g) (granting jurisdiction to the federal courts to review "any final decision of the Commissioner of Social Security"); 20 C.F.R. § 404.900 (outlining when the Commissioner's decisions regarding social security benefits becomes final).

[2] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[3] *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (quotations and citations omitted).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citations omitted).

substantial evidence.[5] Evidence is not substantial if it is overwhelmed by other evidence or if it is a mere conclusion.[6]

To establish a disability, a claimant must demonstrate a physical or mental impairment that has lasted, or can be expected to last, for a continuous period of twelve months and an inability to engage in any substantial gainful work existing in the national economy due to the impairment.[7] The ALJ uses a five-step sequential process to evaluate whether a claimant is disabled.[8] The claimant bears the burden during the first four steps.[9]

In steps one and two, the claimant must demonstrate that he is not presently engaged in substantial gainful activity and he has a medically severe impairment or combination of impairments.[10] "At step three, if a claimant can show that the impairment is equivalent to a listed impairment, he is presumed to be disabled and entitled to benefits."[11] If, however, the claimant does not establish an impairment at step three, the process continues. The ALJ assesses the claimant's residual functioning capacity (RFC), and at step four, the claimant must demonstrate that his impairment prevents him from performing his past work.[12] The Commissioner has the burden at the fifth step to demonstrate that work exists in the national economy within the

---

[5] *Wall*, 561 F.3d at 1052 (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

[6] *Id.* (citing *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005)); *see also Gossett v. Bowen*, 862 F.2d 802, 805 (10th Cir. 1988) (citations omitted).

[7] 42 U.S.C. § 1382c(3)(A); *see also Id.* § 423(d)(1)(A).

[8] 20 C.F.R. § 404.1520(a); *see also Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010).

[9] *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

[10] *Id.* (citations omitted).

[11] *Id.*

[12] *Id.*; *see also* 20 C.F.R. § 416.920(a)(4)(iv).

claimant's RFC.[13] The RFC assessment is used to evaluate the claim at both step four and step five.[14]

### III.   Analysis

The ALJ determined that Kitzman satisfied steps one and two of the sequential process, finding Kitzman was not presently engaged in substantial gainful activity and that he had a medically severe impairment. The ALJ then determined Kitzman did not satisfy step three because his impairments did not meet or equal a listed impairment. After formulating Kitzman's RFC, the ALJ found that under step four, Kitzman was unable to perform any past relevant work. At step five, the ALJ determined that Kitzman could perform the requirements of representative occupations such as a surveillance system monitor. For that reason, the ALJ concluded Kitzman was not disabled under the Social Security Act.

Kitzman argues that the ALJ erred because she failed to consider third-party statements when assessing his credibility and because her credibility determination is not supported by substantial evidence. Kitzman also argues that the ALJ's RFC determination is not supported by substantial evidence. Finally, Kitzman contends the ALJ erred in finding that there were jobs in significant numbers he could perform because during the disability hearing she gave the vocational expert a hypothetical that did not match Kitzman's RFC.

### A.   Credibility Determination

Credibility determinations are peculiarly the province of the finder of fact, and a court will not upset such determinations when supported by substantial evidence. However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a

---

[13] *Id.*; 20 C.F.R. § 416.920(a)(4)(v).

[14] *See* 20 C.F.R. § 404.1520(a)(4)(iv)–(v).

conclusion in the guise of findings.[15] Furthermore, an ALJ cannot ignore evidence favorable to the plaintiff.[16]

The Court will affirm an ALJ's credibility determination which does not rest on mere boilerplate language but instead is linked to specific findings of fact fairly derived from the record.[17] Although the Court will not reweigh the evidence or substitute its judgment for that of the ALJ, the ALJ's conclusions must be reasonable and consistent with the evidence.[18] The Court cannot displace the ALJ's choice between two fairly conflicting views even though the Court may have justifiably made a different choice.[19]

When evaluating a claimant's allegations of pain, the ALJ must consider (1) whether claimant established a pain-producing impairment by objective medical evidence, (2) whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain, and (3) whether considering all the evidence, both objective and subjective, claimant's pain is in fact disabling.[20] If an impairment established by objective medical evidence is reasonably expected to produce some pain, allegations of disabling pain emanating from that impairment require consideration of all relevant evidence.[21] The claimant need not produce direct medical evidence of the cause and effect relationship between the impairment and the

---

[15] *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).

[16] *Owen v. Chater*, 913 F. Supp. 1413, 1420 (D. Kan. 1995).

[17] *White v. Barnhart*, 287 F.3d 903, 909–10 (10th Cir. 2002).

[18] *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005); *White*, 287 F.3d at 905, 908; s*ee also Glenn v. Shalala*, 21 F.3d 983, 988 (10th Cir. 1994).

[19] *Oldham v. Astrue*, 509 F.3d 1254, 1257–1258 (10th Cir. 2007).

[20] *See Kepler*, 68 F.3d at 390–91; *Thompson v. Sullivan*, 987 F. 2d 1482, 1488–89 (10th Cir. 1993); *Luna v. Bowen*, 834 F.2d 161, 163–65 (10th Cir. 1987).

[21] *Luna*, 834 F.2d at 163–65.

degree of claimant's subjective complaints.[22] The absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain, but a lack of objective corroboration of the pain's severity cannot justify disregarding those allegations.

Here, the ALJ found Kitzman's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but the intensity, persistence, and limiting effects of the symptoms were not as limiting as Kitzman alleged. In making this determination, the ALJ considered Kitzman's statements regarding his pain, Kitzman's missed physical therapy appointments, Dr. Moore's May 26, 2009 evaluation of Kitzman, and the other medical evidence. The ALJ concluded that Kitzman's statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent they were inconsistent with his RFC.

### 1. Third-Party Statements

Kitzman argues that the ALJ erred by failing to discuss the written statements of his wife and the Social Security Administration's agent, D. Twombly. Mrs. Kitzman completed a third-party function report for her husband on January 2, 2009.[23] In the report, Mrs. Kitzman discussed the nature and severity of her husband's pain including how his pain made him unable to walk the dog, sleep through the night, do house or yard work, go outside when the weather was wet or cold, drive for long periods of time, stand more than twenty minutes, or concentrate when on

---

[22] *Id.* at 165.

[23] Mrs. Kitzman's Third Party Function Report, Doc. 3-8, at 58–65.

pain medication.[24] D. Twombly's September 24, 2008 report indicates that Kitzman had difficulty using his hand and that he wore an arm brace on his right hand.[25]

In *Adams v. Chater*, the Tenth Circuit held an ALJ is not required to make specific, written findings of each witness's credibility when the written decision reflects that the ALJ considered the witness's testimony.[26] Thirteen years later, the Tenth Circuit confirmed this rule in *Blea v. Barnhart*.[27] In *Blea*, the plaintiff argued that remand was necessary because the ALJ failed to discuss or consider the lay opinion of the plaintiff's wife.[28] The ALJ's decision did not mention any particulars of Mrs. Blea's testimony or even mention that she had testified regarding the nature and severity of her husband's impairments.[29] The Commissioner asserted there was no reversible error because the ALJ is not required to make written findings about each witness's credibility. The *Blea* court affirmed the ruling in *Adams* and noted that "it [was] not at all clear that the ALJ considered Mrs. Blea's testimony in making his decision."[30] Because the record did not indicate that the ALJ considered Mrs. Blea's testimony, the Court remanded the case so the ALJ could properly consider the third-party testimony.[31]

Here, the ALJ did not discuss Mrs. Kitzman's or D. Twombly's statements or refer to them in any other way in the written decision. The Commissioner maintains the ALJ did not err

---

[24] *Id.*

[25] D. Twombly Disability Report, Doc. 3-8, at 2–4.

[26] 93 F.3d 712, 715 (10th Cir. 1996).

[27] 466 F.3d 903, 914–15 (10th Cir. 2006).

[28] *Id.* at 915.

[29] *Id.*

[30] *Id.*

[31] *Id.*

because she was not required to specifically discuss all of the evidence. As *Blea* indicates, however, the ALJ is not required to make specific written findings regarding the credibility of witnesses *only* if the written decision reflects the ALJ considered the witness's testimony.[32]

Furthermore, the ALJ's failure to consider Mrs. Kitzman's and D. Twombly's statements is not harmless error, as the Commissioner argues, because the ALJ's consideration of these statements could have impacted the weight she assigned to Kitzman's allegations. Mrs. Kitzman's and D. Twombly's statements are significantly probative because they corroborate Kitzman's claims regarding the intensity, persistence, and limiting effects of his symptoms. Specifically, Mrs. Kitzman's statement that her husband's pain prevents him from sleeping at night supports Kitzman's pain allegations as well as Dr. Johanning's notation in his Physician's RFC Form that the degree of pain was "debilitating."[33] There may be reasons to discount Mrs. Kitzman's and D. Twombly's statements; the Court, however, will not engage in a post-hoc analysis of the weight that should be accorded these statements. The ALJ erred when she failed to indicate in her written decision that she had considered Mrs. Kitzman's and D. Twombly's statements. The remedy for this error is reversal so the ALJ may properly consider the proffered third-party statements from D. Twombly and Mrs. Kitzman.[34]

---

[32] *Id.*

[33] Dr. Johanning's Residual Functional Capacity Form, Doc. 3-14, at 612.

[34] *See Blea*, 466 F.3d at 915 (citing *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989) ("[W]here the record on appeal is unclear as to whether the ALJ applied the appropriate standard by considering all the evidence before him, the proper remedy is reversal and remand.")).

2.  *Missed Physical Therapy Appointments*

Kitzman next argues that the ALJ erred by failing to properly analyze his missed physical therapy appointments. The ALJ noted Kitzman had cancelled physical therapy appointments ten times and was a "no show" for two additional appointments.[35] The ALJ also noted that when Kitzman cancelled one of the appointments, he told the physical therapist, "'[I] did not make it to see the doctor in K.C. due to car trouble. I don't see him until November 6, so I won't have to go back to work.'"[36]

Before an ALJ may rely on a claimant's failure to pursue treatment as evidence of the claimant's lack of credibility, the ALJ must consider the *Frey* factors: (1) whether the treatment at issue would restore claimant's ability to work, (2) whether the treatment was prescribed, (3) whether the treatment was refused, and (4) whether the refusal was without justifiable excuse.[37] Here, the ALJ used Kitzman's missed physical therapy appointments in her credibility determination.[38] The ALJ mainly focused on the third factor—Kitzman's cancelled and "no show" physical therapy appointments. The ALJ also briefly considered the fourth factor when she mentioned that Kitzman cancelled an appointment because he had yet to see the doctor in Kansas City. Kitzman contends that the ALJ's truncated analysis of the *Frey* factors was insufficient.

---

[35] ALJ Decision, Doc. 3-4, at 16. The ALJ incorrectly listed the October 18, 2007 appointment in the list of cancelled appointments. *See* Physical Therapy Records, Doc. 3-9, at 25 (noting statements Kitzman made while at October 18, 2007 appointment as well as Kitzman's response to the physical therapy).

[36] *Id.*

[37] *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993) (citing *Frey v. Bowen*, 816 F.2d 508, 517 (10th Cir. 1987)).

[38] ALJ Decision at 15–16.

The Commissioner argues that the ALJ did not err in her analysis of the *Frey* factors because Kitzman's "no show" appointments reflected poorly on his credibility and undermined his excuses for cancelling appointments. The ALJ, however, failed to consider whether Kitzman had a justifiable reason for the "no show" appointments. The physical therapist's notes indicate that for both of the "no show" appointments, Kitzman called the same day to let her know why he missed the appointments.[39] Kitzman failed to show for the November 21, 2007 appointment because he had the wrong appointment time, and he failed to show for the January 1, 2008 appointment because his child was sick.[40] Moreover, as Kitzman notes, he had a justifiable reason to cancel some of his physical therapy appointments, and he rescheduled many of his cancelled appointments. The ALJ failed to provide sufficient reasoning and analysis of the missed appointments as required by *Frey*, including whether Kitzman had a justifiable reason for missing the appointments. Accordingly, the ALJ erred by failing to properly apply the *Frey* test when determining whether Kitzman's missed appointments undermined his credibility.[41]

### 3. *Dr. Moore and Symptom Magnification*

Kitzman argues that the ALJ erred in relying on Dr. Moore's finding that Kitzman's symptom magnification tests were positive. In a May 26, 2009 worker's compensation letter, Dr. Moore noted that Kitzman's strength measurements were unreliable because Kitzman tested positive for symptom magnification during his strength assessment. Dr. Moore also noted that he measured Kitzman's permanent partial impairment at twenty percent of the right upper extremity at the elbow, that Kitzman had no permanent restrictions, and that Kitzman required no

---

[39] Physical Therapy Records, Doc. 3-9, at 21, 24.

[40] *Id.*

[41] *See Thompson*, 987 F.2d at 1490.

further medical or surgical care. The ALJ found "these results consistent with the missed therapy appointments when it comes to credibility analysis."[42] She further noted that "findings of symptom magnification would suggest the claimant's symptoms are not as intense as he has alleged and further support that his alleged symptoms are not inconsistent with the residual functional capacity."[43]

Kitzman contends the ALJ should not have relied on Dr. Moore's finding of symptom magnification because (1) Dr. Moore was the only physician who found symptom magnification, (2) other doctors found Kitzman's claims regarding his impairment to be credible, (3) the symptom magnification test related only to his strength assessment and not his claims regarding pain, and (4) Dr. Moore's May 26, 2009 opinion is inconsistent with his opinion rendered four months earlier. Kitzman also argues that Dr. Moore's opinion has limited value under 20 C.F.R. § 404.1527(d)(2)(2010) because he was a physician paid to render an opinion for the purposes of a worker's compensation claim. The Commissioner contends the ALJ was permitted to consider Dr. Moore's finding of symptom magnification in evaluating Kitzman's credibility.

While the Commissioner is correct that the ALJ may consider symptom magnification when making a credibility determination, Kitzman appears to be challenging the weight the ALJ assigned Dr. Moore's opinion rather than the ALJ's general ability to consider evidence of symptom magnification. The ALJ did place particular emphasis on Dr. Moore's symptom magnification finding when she concluded Kitzman's symptoms were not as intense as he alleged, and Kitzman is correct that Dr. Moore's symptom magnification finding does appear to have some limitations. Because the ALJ will have to properly consider third-party statements

---

[42] ALJ Decision, Doc. 3-4, at 17.

[43] *Id.*

and the *Frey* factors on remand, the Court will not assess the weight the ALJ assigned Dr. Moore's finding of symptom magnification. The Court instructs the ALJ to consider Kitzman's objections to Dr. Moore's assessment when reevaluating Kitzman's credibility.

### *4. Regulatory Factors and Credibility*

Kitzman argues the ALJ erred by failing to specify which parts of his testimony were not credible and by failing to relate the evidence to the regulatory factors relevant to making a credibility determination. The relevant factors the Commissioner considers when evaluating a claimant's symptoms, such as pain, are defined in 20 C.F.R. § 404.1529(c)(3). These factors include daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to relieve pain or alleviate other symptoms; and treatment, other than medication, received for relief of pain or other symptoms.[44] Kitzman notes the ALJ also failed to consider his work history and earnings and his attempt to return to work at Lansing Correctional Facility and to work part-time after his injury, as required by SSR 96-7p. Although the ALJ's credibility determination must be supported by substantial evidence, the Tenth Circuit has held that this does not "require a formalistic factor-by-factor recitation of the evidence. So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied."[45]

Here, the ALJ did mention in the written decision that she examined the evidence based on the requirements of regulatory factors including 20 C.F.R. § 404.1529(c)(3) and SSR 96-7p.

---

[44] 20 C.F.R. § 404.1529(c)(3).

[45] *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (citing *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (requiring a link between the evidence and the credibility determination).

The ALJ also discussed which factors she used to make her credibility determination—Kitzman's statements regarding his impairment, Kitzman's missed physical therapy appointments, Dr. Moore's finding of symptom magnification, and the medical evidence. Although the ALJ did not provide a formalistic factor-by-factor recitation of the evidence, she was not required to do so.

The Commissioner argues that because the ALJ did discuss the evidentiary factors showing that Kitzman's symptoms were not as limiting as he alleged, the ALJ's credibility determination should be upheld. The Commissioner cites *Castillo v. Astrue*,[46] to support his argument. In *Castillo*, the Court upheld the ALJ's credibility determination because the ALJ evaluated all of the evidence, based the credibility determination on the correct legal standard, and affirmatively linked the credibility determination to substantial evidence in the record.[47] Here, the ALJ did sufficiently set forth the specific evidence she relied upon in evaluating Kitzman's credibility, but she did not apply the correct legal standard when she analyzed this evidence. Accordingly, *Castillo* is not applicable in this case.

**B.     RFC Assessment and Step 5**

Because this Court concludes the ALJ did not follow the correct legal standards when making her credibility determination, the Court will not reach the remaining issues raised in the petition. The ALJ's RFC and evaluation of whether work exists in the national economy within Kitzman's RFC assessment may be affected by the ALJ's reconsideration of her credibility determination in accordance with the Court's preceding analysis.

---

[46] 2011 WL 13627 (D. Kan. Jan. 4, 2011).

[47] *Id.* at 10.

**IT IS ACCORDINGLY ORDERED** this 20th day of August, 2013, that the judgment of the Commissioner is **REVERSED**, and that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) **REMANDING** the case for further proceedings consistent with this memorandum and order.

**IT IS SO ORDERED**.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE